**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CANTWELL & CANTWELL and | ) | Appeal from the United States |
| LELAND E. SHALGOS | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois, Eastern Division |
| Plaintiff-Appellants, | ) | |
| | ) | Bankr. No. 08 B 33896 |
| v. | ) | Adversary Proceeding No. 09 A 00392 |
| | ) | Bankruptcy Judge Carol A. Doyle |
| ALANNA C. VICARIO, | ) | |
| | ) | Dist. Ct. No. 10 C 7493 |
| Defendant-Appellee. | ) | District Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER ON APPEAL**

Plaintiffs Cantwell & Cantwell and Leland E. Shalgos timely filed this appeal from a final order of the bankruptcy court entering judgment in favor of Defendant Alanna C. Vicario in an adversary proceeding. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). See *In re Teknek, LLC*, 512 F.3d 342, 345 (7th Cir. 2007). For the reasons explained below, the Court affirms the bankruptcy court's judgment.

**I.     Background**

**A.     JMV Builders, Inc.**

Before Alanna Vicario and her husband John Vicario filed for bankruptcy, John, who is a carpenter by trade, owned his own home building business. Doing business as JMV Builders, Inc., John built homes in Illinois, Indiana, and Michigan. Alanna listed her profession as "homemaker" on the couple's bankruptcy filings, but she also did some informal paperwork and banking for JMV Builders, Inc.

Until approximately 2006, JMV Builders, Inc was a relatively successful company. In 2006, however, Harbor Dunes, LLC, a housing development group in New Buffalo, Michigan for which John had been building homes since late 2003 or early 2004, stopped paying John's

invoices. This led to a serious shortage in working capital for John's ongoing projects, including his work on a large home that he was building for resale ("the big house") on property located at 113 Upland Drive in Michigan City, Indiana (the "Upland property"). Knowing that John was in need of money, John's former friend, Daniel Abraham, known as "Danny," arranged for John to borrow $200,000 from Danny's parents, Paul and Catherine Abraham. Under the terms of the loan, John was to repay the principal and $12,000 in total interest on or before November 5, 2006. On May 5, 2006, John signed a promissory note memorializing the loan and his promise to repay Paul and Catherine Abraham. Alanna Vicario did not sign the note.

Although the promissory note stated that John was to use the $200,000 loan to complete work on the big house, he used the funds as working capital on all of his projects and, as a result, John did not complete work on the big house in time to repay his loan to Paul and Catherine Abraham.

In December of 2007, still desperately short on capital and being pestered by Danny about his parents' loan, John sold the Upland property to Joni Elliott, the wife of John's third cousin. Although the terms were not reduced to writing or recorded, John and Joni Elliott agreed that John would perform the work and finish building the big house, Joni Elliott would pay for the materials that John needed to complete the work, and, at closing on the sale, Joni Elliott would pay John for his work on the house. John and Joni Elliott also agreed that they would split any profits resulting from the sale of the house. After he sold the Upland property to Joni Elliott, John retained control of the property and performed work on the big house. He referred to the property as his own and signed a mortgage on September 6, 2008 to a lumber company, verifying that he was the owner of the property.

John also sought to alleviate his financial troubles by transferring the interest that he owned in a development group called Westcott Woods, LLC. In 2004 or 2005, John and Phil Hamilton – who was also the driving force behind the Harbor Dunes project – had decided to invest in and develop another piece of property known as Westcott Woods. In August of 2004, Hamilton bought two parcels of land from Mrs. Westcott: (1) a single-family home located at 724 Eastwood Place in Michigan City, Indiana, known as "the little house," and (2) twenty-four acres of undeveloped property. In September of 2005, Hamilton signed a quitclaim deed transferring title of the little house from himself to himself and John as tenants in common. Hamilton and John also both initially held a twenty-five percent interest in Westcott Woods, LLC, which planned to develop the remaining twenty-four acres.

In March of 2006, John sold ten percent of his interest in the LLC to Alfonso D'Amico, one of the other investors in Westcott Woods, LLC, who already held a ten percent interest. On July 28, 2006, John transferred the remaining fifteen percent of his ownership interest in Westcott Woods, LLC to Danny Abraham in exchange for a reduction by $75,000 of the amount that John owed to Danny's parents. Despite these transfers, John retained his interest in the little house with Hamilton as tenants in common.

Shortly thereafter, John and Alanna Vicario signed a promissory note on behalf themselves and JMV Builders, Inc. in favor of Harbor Dunes, LLC for $87,615. John also signed a related security agreement on behalf of JMV Builders, Inc. purporting to convey a security interest to Harbor Dunes, LLC in John's supposed twenty percent interest in Westcott Woods, LLC, and all real property owned by Westcott Woods, LLC. Thus, less than three weeks after transferring his remaining interest in Westcott Woods, LLC to Danny Abraham, John signed a security agreement that placed a lien on his former ownership interest.

All the while, Danny was calling and sending e-mails to John seeking payment on his parents' loan. Many of these requests for payment were made by e-mail to both John and Alanna's e-mail accounts and they included a discussion of the future sale of the Upland property, John's lien on Danny's interest in Westcott Woods, LLC, and the legal title that John still held in the little house. For example, John made clear in his conversations and e-mails to Danny that he expected to make a significant amount of money when his work on the big house was finished and the Upland property was sold, and that he would repay the Abrahams with that money. In one e-mail, written on September 20, 2008, John wrote to Danny that he could "do a payoff once the house closes. Would you agree to 160,000 at close? Let me know." (Tr. 778:13-17.) In another, written on November 23, 2008, John wrote to Danny that the big house would be done in January and that Danny would get his money. In this e-mail, John stated, "I'm lucky my cousin bailed me out on this house or my line of credit would have foreclosed on it a year and a half ago. That's all that's left for both of us to get any money." (Tr. 779:2-6.) A number of John's e-mails also evidenced the intent to hide assets and creditors – particularly Paul and Catherine Abraham – from his bankruptcy filings.

While Alanna Vicario was carbon copied on many of Danny Abraham's e-mails to John, John never copied her on his e-mails back to Danny. On at least two occasions, John wrote to Danny about the Abrahams' loan using Alanna's e-mail account.

### B. Bankruptcy Proceedings

On December 11, 2008, the Vicarios filed a joint voluntary Chapter 7 Bankruptcy Petition, requesting the discharge of their debts. Along with their petition, the Vicarios filed: (1) a creditor matrix listing the names and addresses of their creditors; (2) schedules of their assets, liabilities, income, and expenditures; and (3) a statement of financial affairs. The Vicarios also

filed declarations that the information provided in these filings was true and correct to the best of their knowledge.

The Vicarios made a number of omissions or misstatements in their bankruptcy filings, which led the Abraham family to bring this adversary proceeding against the Vicarios. In their five-count complaint, the Abrahams objected to the discharge of the Vicarios' debts under 11 U.S.C. § 727(a)(4)(A), (a)(2), (a)(4)(D), and (a)(3); and sought a denial of the particular debt that the Vicarios owed to Paul and Catherine Abraham under 11 U.S.C. § 523(a)(2)(A). The Abrahams alleged that a denial of discharge was warranted in this case because the Vicarios: (1) failed to list the Abrahams and other creditors on their creditor matrix; (2) failed to list the Abrahams as creditors on their schedules; (3) failed to report John's interest in the little house; (4) failed to list the Vicarios' continued interest in the Upland property; and (5) failed to list John's transfer of his interest in Westcott Woods, LLC in their statement of financial affairs. The bankruptcy court dismissed the Abrahams' claim under § 523(a)(2)(A) as to Alanna Vicario and the Vicarios answered the remaining claims against them.

On November 19, 2009, lacking the financial resources necessary to prosecute the case, the Abrahams moved to dismiss their complaint against the Vicarios. In accordance with Local Rule 7041-1, the bankruptcy court issued an order stating that any party that wished to substitute as the plaintiff in this adversary case must move to do so on or before January 14, 2010. On January 12, 2010 and January 13, 2010, respectively, Plaintiffs Leland Shalgos and Cantwell & Cantwell moved to substitute as plaintiffs. The bankruptcy court granted their motions and the Abrahams' motion to dismiss and ordered the new plaintiffs ("Plaintiffs") to file an amended complaint. Because the bankruptcy court intended for Plaintiffs to amend the complaint simply

to reflect the fact that they had substituted into the case as plaintiffs, not to add new claims, the court did not set a date by which the Vicarios were to answer the amended complaint.

The first four claims in Plaintiffs' amended complaint were substantially similar to the first four claims in the Abrahams' complaint – that is, claims under § 727(a)(4)(A), (a)(2), (a)(4)(D), and (a)(3) objecting to the discharge of the Vicarios' debts.[1]  Notwithstanding their role in the case as substitute plaintiffs, Plaintiffs also added a fifth count under § 727(a)(5) to their amended complaint.  Plaintiffs brought this count in lieu of the Abrahams' claim under § 523(a)(2)(A), which sought a determination about the debt owed particularly to the Abrahams and thus could not be prosecuted on the Abrahams' behalf.  The Vicarios did not answer the amended complaint.

### B.     The Trial

Plaintiffs' case against the Vicarios proceeded to trial before the bankruptcy court.  In their case-in-chief, Plaintiffs called two witnesses:  Telly Stefaneas, an attorney from Cantwell & Cantwell who had performed legal work for John Vicario in the past, and Danny Abraham.[2]  At the close of Plaintiffs' case, the Vicarios made an oral motion under Federal Rule of Civil Procedure 52(c)[3] for a judgment on partial findings in their favor.  The court immediately denied the motion as to John Vicario, ruling that Plaintiffs had established a *prima facie* case with

---

[1] Plaintiffs also added allegations in Counts I through IV that were specific to their claims against the Vicarios.

[2] The Court would be remiss if it failed to note the concerns that Judge Doyle had with Danny Abraham's testimony.  (See Tr. 805:4-807:1.)  Judge Doyle found that Danny intentionally and repeatedly violated the automatic bankruptcy stay by trying to collect on his parents' loan after the Vicarios had filed for bankruptcy.  She also concluded that Danny was "in league with John" about hiding the Abrahams as creditors in John's bankruptcy filings, (Tr. 805:14.), and regretted that the Bankruptcy Code does not provide for an "unclean hands" defense under these circumstances.  The Court shares Judge Doyle's views, but agrees that Danny's "unsavory actions" do not change the outcome in this case.  (Tr. 806:17.)

[3] Rule 52(c) applies to adversary proceedings in bankruptcy court through Bankruptcy Rule 7052.

respect to him that supported a denial of discharge under the provisions of § 727(a). However, the court expressed the doubts that it had about the evidence against Alanna Vicario and asked Plaintiffs to summarize their case against her. After hearing Plaintiffs' summary, the bankruptcy court denied the Vicarios' Rule 52(c) motion.

The Vicarios proceeded with their case-in-chief, during which they called only witness – John Vicario himself. Neither side called Alanna Vicario as a witness. After the Vicarios rested, Plaintiffs did not request permission to put on a rebuttal case.

### C.       The Bankruptcy Court's Judgment

After the conclusion of the trial, the bankruptcy court issued a detailed oral ruling in which it found in favor of Plaintiffs in part and in favor of the Vicarios in part, and denied discharge as to John Vicario only. As an initial matter, the bankruptcy court declined to impute any admissions to the Vicarios for their failure to file an answer to the first amended complaint. The court acknowledged that the bankruptcy rules typically provide for a responsive pleading to an amended complaint, but, because of the unusual procedural circumstances in this case, the court concluded that the Vicarios' failure to answer did not lead to the admission of Plaintiffs' allegations.

The bankruptcy court then entered judgment against John Vicario on two of the five counts (Counts I and II) and concluded that he was not entitled to a discharge. The court determined that Plaintiffs met their burden of proving by a preponderance of the evidence that John made false oaths for purposes of § 727(a)(4)(A) and concealed assets for purposes of § 727(a)(2). Specifically, the bankruptcy court found that John made false oaths and concealed his equity interest or right to a significant payment for work performed pre-petition on the big house and that he made false oaths and concealed his legal title to the little house. The court also ruled

that John made a false oath when he failed to list Paul and Catherine Abraham as creditors, despite owing them money based on the $200,000 loan that remained unpaid when the case was filed. Finally, the court found that John made a false oath when he failed to list in his statement of financial affairs his former ownership in Westcott Woods, LLC, which he had transferred in 2006.

By contrast, the bankruptcy court determined that Plaintiffs did not meet their burden of proving by a preponderance of the evidence that Alanna Vicario failed to disclose assets or made any false oaths with the intent to deceive. The court was "unwilling to infer from the few e-mails in which [Alanna] was CC'd and the fact that she was married to John that she had [the] intent to make false oaths and hide assets." (Tr 809:13-16.) At the same time that it announced a final disposition of the claims against Alanna, the bankruptcy court revisited its previous ruling on Alanna's Rule 52(c) motion. The court stated that in retrospect, it should have delayed ruling on the motion until after the close of the evidence. The court then modified its earlier oral ruling to do just that, declined to rule on the motion as to Alanna until after the close of the case, and then denied the motion. The Court concluded by reiterating that Plaintiffs had not proven that Alanna acted with the intent necessary to deny discharge and entered judgment in her favor on Counts I and II.

As to Counts III and IV, the court found that Plaintiffs did not prove that John or Alanna Vicario knowingly or fraudulently withheld books and records from the trustee or that they concealed, failed to keep, or destroyed documents relating to their financial affairs. The court entered judgment in favor of the Vicarios on these two counts. Finally, the bankruptcy court dismissed Count V as to both Alanna and John Vicario because it was not properly before the court. The court stated that it did not give Plaintiffs leave to add a fifth count under § 727(a)

when it granted Plaintiffs' motion to substitute for the Abrahams. In any case, the court noted, Plaintiffs failed to prove any unexplained loss of assets that would fall within § 727(a)(5) other than those that already were covered by its decision as to Counts I and II. Having found in favor of Alanna Vicario on all counts in the complaint, the bankruptcy court entered judgment in her favor and granted her discharge.

Plaintiffs appeal the bankruptcy court's judgment as to Alanna Vicario. Plaintiffs raise three procedural issues – two relating to their substitution as plaintiffs into the case in the place of the Abrahams and one challenging the bankruptcy court's reconsideration of its ruling on Alanna's Rule 52(c) motion. Plaintiffs also contend that the bankruptcy court erred by entering judgment in favor of Alanna on Counts I through IV and granting her discharge. The Court will address each in turn.

## II.    Analysis

### A.    Standard of Review

In an appeal from the bankruptcy court's judgment following a bench trial, this Court reviews the bankruptcy court's conclusions of law *de novo*, and its findings of fact, as well as applications of law to those findings of fact, for clear error. See *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011) (reviewing the bankruptcy court's findings of fact, including whether the debtor possessed the requisite intent to deceive or defraud, for clear error); *Egan Marine Corp. v. Great Am. Ins. Co. of New York*, --- F.3d ---, Nos. 11-1266, 11-1346, 2011 WL 5924425, at *9 (7th Cir. Nov. 23, 2011) ("In an appeal from a bench trial, 'we review a district court's conclusions of law de novo, and we review its findings of fact, as well as applications of law to those findings of fact, for clear error'"); see also Fed. R. Civ. P. 52(a)(6) ("Findings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must

give due regard to the trial court's opportunity to judge the witnesses' credibility."); Fed. R. Bankr. P. 7052 (stating that Rule 52 applies in bankruptcy adversary proceedings).

### B.     Procedural Issues

#### 1.     Plaintiffs' Substitution into the Case

Plaintiffs make two arguments relating to their substitution as plaintiffs into the case. Specifically, Plaintiffs claim that the bankruptcy court erred when it (1) dismissed Count V of their amended complaint and (2) concluded that the Vicarios' failure to answer the amended complaint did not result in the admission of each of Plaintiffs' allegations. Although Plaintiffs do not frame them as such, these two issues are related and require some discussion about what the rules require when a party objecting to discharge under § 727(a) moves to voluntarily dismiss his or her case.

Special rules govern the voluntary dismissal of a complaint in which the plaintiff is objecting to the debtor's discharge under § 727(a). See *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996); Fed. R. Bankr. P. 7041 (incorporating Federal Rule of Civil Procedure 41, but requiring additional steps for cases in which the plaintiff is objecting to the debtor's discharge). These rules reflect the fact that "§ 727 is a blanket prohibition of a debtor's discharge, thereby protecting the debts owed to all creditors." *In re Chalasani*, 92 F.3d at 1309. Bankruptcy Rule 7041 provides that the bankruptcy court may not grant a plaintiff's motion for voluntary dismissal of his or her complaint until notice is given to the trustee, the United States trustee, and other interested parties. In addition, the bankruptcy court may condition the dismissal on such "terms and conditions" it deems proper. Fed. R. Bankr. P. 7041.

One of the conditions to dismissal that a bankruptcy court may require is "that the debtor allow another party to pursue a § 727 complaint that was timely filed." *In re Chalasani*, 92 F.3d

at 1312. Local Bankruptcy Rule 7041-1 accounts for this condition by requiring that the notice to the debtor, trustee, and creditors of a motion to voluntarily dismiss a case brought under § 727 "include a statement that the trustee or any creditors who wish to adopt and prosecute the adversary proceedings * * * shall seek leave to do so at or before the hearing on the motion to dismiss." Whether the bankruptcy court's power to grant a party's motion to substitute in the place of the original plaintiff arises from Bankruptcy Rule 7041 itself (see, *e.g.*, *In re Chalasani*, 92 F.3d at 1313), from some combination of § 727(a) and 11 U.S.C. § 105 (see, *e.g.*, *In re McKissack*, 320 B.R. 703, 719 (Bankr. D. Colorado 2005)), from Bankruptcy Rule 7025 (see, *e.g.*, *In re Joseph*, 121 B.R. 679, 683 (Bankr. N.D.N.Y. 1990)), or under a fiduciary theory (see, *e.g.*, *In re Beltran*, 2010 WL 3338533, at *5 (Bankr. N.D. Ill. Aug. 25, 2010)), "courts almost universally allow a qualified party to substitute in place of a plaintiff who wishes to abandon its § 727 case." *In re McKissack*, 320 B.R. at 719.

Nevertheless, "the purpose of substitution is to allow an adjudication on the merits of the original claim," not to allow the substituted party to "make an end run around the time limitations" in Bankruptcy Rule 4004. *In re McKissack*, 320 B.R. at 720. Accordingly, it is improper "to allow substitution of a new plaintiff for the original and then to allow the new plaintiff to amend the complaint to state new causes of action * * *." *Id.* ("[B]y limiting the substituted plaintiff to taking over the case in the posture that he finds it, for better or for worse, the Court insures that only those § 727 claims brought within the time constraints of Rule 4004 may be pursued."); see also, *e.g.*, *In re Bilzerian*, 1995 WL 934184, at *5 (M.D. Fla. May 15, 1995) (stating that in this instance, "the new creditor is substituted for the former creditor and is limited to the objections to discharge set forth in the original complaint"); *In re Donovan*, 411 B.R. 756, 766-67 (Bankr. S.D. Fla. 2009) (collecting cases and noting that "substitution of a

creditor for an original plaintiff that abandons § 727 claims may be appropriate as to the claims asserted in the original complaint").

Here, instead of filing an amended complaint that reflected their position as substituted plaintiffs in the case already brought by the Abrahams, Plaintiffs filed a complaint with an entirely new count under § 727(a)(5). This was improper under the authorities cited above. Because of the procedural posture of the case, Plaintiffs were limited to the objections to discharge set forth in the Abrahams' complaint.[4] As the Abrahams' claim under § 523(a)(2)(A) was personal to the debt John Vicario owed to them, Plaintiffs could not substitute in as plaintiffs for that claim. See *In re Chalasani*, 92 F.3d at 1309 (stating that "§ 523 simply bars discharge of specific debts incurred through fraud"). Plaintiffs thus were limited to the four claims under § 727(a) that the Abrahams originally brought against the Vicarios. They were not entitled to add a new claim. Accordingly, the court did not err when it dismissed Count V of Plaintiffs' amended complaint.

Nor did the bankruptcy court err when it concluded that Alanna Vicario's failure to answer Plaintiffs' amended complaint did not result in the admission of the Plaintiffs' allegations. Although the court did order Plaintiffs to file an amended complaint when it granted their substitution into the case as plaintiffs, the court intended that the amended complaint simply reflect Plaintiffs' substitution in the case in the place of the Abrahams. Indeed, as discussed above, a bare substitution is all that bankruptcy law permits. At that point, the Vicarios had already answered the Abrahams' claims against them. The bankruptcy court did not abuse its discretion when it concluded, under these circumstances, that a responsive pleading to Plaintiffs'

---

[4] The Court notes that the time limits in Bankruptcy Rule 4004 are not jurisdictional and are subject to certain equitable defenses. See *In re Kontrick*, 295 F.3d 724, 733 (7th Cir. 2002). Here, however, Plaintiffs did not ask for leave to add an additional claim, let alone provide a reason for why their untimely fifth claim should be allowed.

amended complaint was not required. Because Alanna Vicario was not required to file an answer to Plaintiffs' amended complaint, her failure to do so did not result in the admission of Plaintiffs' allegations.

For these reasons, the Court affirms the bankruptcy court's decision to dismiss Count V of Plaintiffs' amended complaint and its refusal to deem the allegations in Plaintiffs' amended complaint to be admitted.

### 2. The Bankruptcy Court's Reconsideration of it Rule 52(c) Ruling

Plaintiffs also argue that the bankruptcy court erred when it reconsidered its denial of the Federal Rule of Civil Procedure 52(c)[5] motion that Alanna Vicario made at the close of Plaintiffs' case. This Court reviews the bankruptcy court's decision to reconsider its interlocutory orders for an abuse of discretion. See *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) ("every order short of a final decree is subject to reopening at the discretion of the district judge").

Rule 52(c), which replaced part of Rule 41(b), allows a court in a nonjury trial to enter judgment if a party has been fully heard on an issue and the court can make an appropriate disposition on the evidence that has been presented. See Fed. R. Civ. P. 52(c); Wright & Miller, *Federal Practice & Procedure* § 2573.1 (3d ed. 2011). When a trial court rules on a Rule 52(c) motion, it takes "an unbiased view of all the evidence" and gives it such weight as the court believes it is entitled to receive. *Sanders v. Gen. Servs. Admin.*, 707 F.2d 969, 971 (7th Cir. 1983) (discussing former Rule 41(b)). The court does not make any inferences in the plaintiff's favor, nor does it "concern itself with whether the plaintiff has made out a prima facie case." *Id.* The court's role is to weigh the evidence, resolve any conflicts, and decide for itself where the

---

[5] Federal Rule of Civil Procedure 52(c) is made applicable to adversary bankruptcy proceedings through Bankruptcy Rule 7052.

preponderance lies. *Id.* (citing 9 Wright & Miller, *Federal Practice & Procedure* § 2371 at 224-25 (1971)).

Plaintiffs argue that they were prejudiced by the bankruptcy court's decision to modify its earlier ruling on Alanna's Rule 52(c) motion. Plaintiffs contend that the bankruptcy court's denial of Alanna's motion was a determination that Plaintiffs had established a *prima facie* case. In reliance on that ruling and the fact that, in their view, Alanna Vicario offered no evidence to rebut Plaintiffs' prima facie case, Plaintiffs contend that they did not "aggressive[ly]" cross-examine John Vicario, did not put on a rebuttal case, and did not call Alanna to testify in that rebuttal case.

Plaintiffs' argument is unpersuasive. First, the bankruptcy court has the inherent authority to reconsider its interlocutory orders at any time before it enters final judgment, see Fed. R. Civ. P. 54(b) (made applicable here through Bankruptcy Rule 7054); *Moses H. Cone Mem. Hosp.*, 460 U.S. at 12; *Sims v. EGA Prods. Inc.*, 475 F.3d 865, 870 (7th Cir. 2007) ("nonfinal orders are generally modifiable"), and the court did not abuse its discretion in doing so in this case. Moreover, in view of Judge Doyle's expressed hesitancy in regard to Plaintiffs' case against Alanna when she was considering the Vicarios' Rule 52(c) motion, Plaintiffs should have recognized the risks of holding anything back either in terms of their cross-examination during the Vicarios' case-in-chief or in terms of Plaintiffs' own rebuttal case.

Moreover, Plaintiffs could not have suffered prejudice here. Rule 52(c) gives the court discretion to "decline to render any judgment until the close of the evidence." Fed. R. Civ. P. 52(c). Whether a trial court rules on a party's Rule 52(c) motion at the close of the non-moving party's evidence or reserves ruling on the motion until after it has heard all of the evidence in the case is immaterial. See Wright & Miller, *Federal Practice & Procedure* § 2573.1 (3d ed. 2011)

(stating that "nothing turns on whether the trial judge [reserves ruling] or merely denies the earlier motion"). On the contrary, a trial court's denial of a defendant's Rule 52(c) motion "is tentative and does not constrain the court's ultimate disposition of the case." *Sanders*, 707 F.2d at 972; *Armour Research Found. of Ill. Inst. of Tech. v. Chicago, Rock Island & Pacific R.R.*, 311 F.2d 493, 494 (7th Cir. 1963) (discussing former Rule 41(b)) (stating that "the denial of defendant's motion amounts to nothing more than a refusal to enter judgment that that time. At most it constitute[s] a tentative and inconclusive ruling on the quantum of plaintiff's proof."). The bankruptcy court's initial decision to deny Alanna Vicario's Rule 52(c) motion at the close of Plaintiffs' case was not necessarily a conclusion that Plaintiffs had put forth a *prima facie* case (see *Sanders*, 707 F.2d at 971), nor did Judge Doyle expressly say that it was. While she did state that Plaintiffs had "established a prima facie case certainly with respect to Mr. Vicario" (Tr. at 168-69), she simply denied Plaintiffs' motion without further comment as to Alanna. In short, it was simply a decision that, at that time, the preponderance of the evidence did not weigh in Alanna's favor. See *id.*

Finally, even assuming that the court's denial of Alanna Vicario's Rule 52(c) motion was tantamount to a finding that Plaintiffs had established a *prima facie* case, the Court does not agree with Plaintiffs' assessment that John Vicario's testimony did nothing to rebut their case against Alanna. Judge Doyle plainly thought otherwise, and there is ample support in the record for her conclusion. As discussed further below, John testified that Alanna knew little about his business dealings. It was within Judge Doyle's purview, as the trier of fact, to credit that testimony and to conclude from it that Alanna did not have the intent required for a denial of discharge. If Plaintiffs wanted Judge Doyle to hear what Alanna Vicario had to say, they should have called her to the stand, either in their case-in-chief or, at a minimum, as a rebuttal witness

once John's testimony placed in issue the extent of Alanna's knowledge of the pertinent events. Indeed, it is plain from the colloquy that the parties had with Judge Doyle regarding whether Alanna would be permitted to be absent during portions of the trial that Plaintiffs were aware that: (1) the Vicarios would not be calling Alanna in their case-in-chief, and (2) if within the rules, Judge Doyle would allow Plaintiffs to call Alanna as a rebuttal witness. (Tr. 132:15-138:1-3.) During this conversation, Plaintiffs went so far as to reserve the right to call Alanna in a rebuttal case, if necessary. (Tr. 136:13-16.) Having failed to avail themselves of those opportunities to elicit Alanna's testimony, Plaintiffs cannot point the finger at Judge Doyle's interlocutory ruling as having prejudiced their case. In sum, the bankruptcy court's reconsideration of Alanna Vicario's Rule 52(c) motion after it heard all of the evidence was not an abuse of discretion and thus provides no reason to disturb the result in this case.

## B.    Plaintiffs' Substantive Arguments

Having resolved Plaintiffs' procedural arguments, the Court moves to their challenge of the bankruptcy court's judgment on Counts I through IV. The primary benefit of filing for bankruptcy under Chapter 7 is that the financial discharge offered by the Bankruptcy Code gives the debtor an opportunity for a "fresh start." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011) (citing *In re Chambers*, 348 F. 3d 650, 653 (7th Cir. 2003)). Nevertheless, this privilege is reserved for the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (internal quotation marks and citation omitted); see *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966 (7th Cir. 1999). The Bankruptcy Code provides that a bankruptcy court "shall grant the debtor a discharge," but then lists a number of exceptions that deny the privilege of discharge to debtors who have been less than honest. § 727(a). In their amended complaint, Plaintiffs objected to the Vicarios' discharge on the basis of four of these exceptions – §

727(a)(4)(A); § 727(a)(2); § 727(a)(4)(D); and § 727(a)(3).[6]  Plaintiffs now argue that the district court erred in its ruling as to each.

As objectors, Plaintiffs must establish grounds for denial of discharge under § 727(a) by a preponderance of the evidence.  *In re Scott*, 172 F.3d 959, 966 (7th Cir. 1999).  The Court construes exceptions to discharge "strictly against a creditor and liberally in favor of the debtor." *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002) (quotation omitted).  As noted above, to the extent that Plaintiffs challenge the bankruptcy court's findings of fact, and its applications of law to those findings of fact, this Court's review is for clear error.  *Matter of Krehl*, 86 F.3d 737, 743 (reviewing the bankruptcy court's determination of the debtor's intent in the context of § 727(a) for clear error).  The clearly erroneous standard does not permit the Court to overturn the trier of fact "simply because it is convinced it would have decided the case differently."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985).  In contrast, "where two permissible conclusions can be drawn, the factfinder's choice cannot be clearly erroneous."  *Matter of Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1990).

### 1.    Count I:  Section 727(a)(4)(A)

Plaintiffs first argue that the bankruptcy court erred when it found that Plaintiffs did not meet their burden of proving that Alanna Vicario "knowingly and fraudulently * * * made a false oath or account."  § 727(a)(4)(A).  To prevail on a claim under § 727(a)(4)(A), an objector must prove that:  (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  *Stamat*, 635 F.3d at 978 (citing *The Cadle Company v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009)); *In re Self*,

---

[6] Because the bankruptcy court properly dismissed Count V of the amended complaint on procedural grounds, the Court need not reach Plaintiffs' substantive arguments as to that claim.

325 B.R. 224, 245 (Bankr. N.D. Ill. 2005).  "Intent to defraud involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression."  *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998).  Fraudulent intent may be proven with circumstantial evidence, "and the cumulative effect of false statements may, when taken together, evidence a reckless disregard for the truth sufficient to support a finding of fraudulent intent."  *In re Duncan*, 562 F.3d at 695; see also *In re Chavin*, 150 F.3d at 728 (stating that reckless disregard of the truth "is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material").

After hearing the evidence in this case, the bankruptcy court found that the Vicarios made statements under oath in their petition for bankruptcy, bankruptcy schedules, and statement of financial affairs; that some of the statements they made in their filings were false; and that these false statements related materially to the bankruptcy case.  In particular, the court concluded that the Vicarios were not truthful when they failed to list in their bankruptcy filings:  (1) John's equity interest or right to a significant payment for work performed pre-petition on the big house; (2) John's legal title to the little house; (3) John's unpaid debt to the Abrahams; and (4) John's former ownership in Westcott Woods, LLC.  While the court also concluded that John Vicario knew that the statements he made under oath were false and that he made these statements with the intent to deceive, it found that Plaintiffs did not provide enough evidence to prove that Alanna Vicario knowingly made any false oaths with the intent to deceive.

Plaintiffs argue that the bankruptcy court's findings as to Alanna's intent were in error.  For support, Plaintiffs point to the following facts:  (1) Alanna failed to include nine creditors on her creditor matrix whom she later included in her schedules; (2) Alanna was closely involved in

the operations of JMV Builders, Inc. and knew the details of the company's debts; (3) she was copied on a number of e-mails that Danny Abraham sent to John about the Abrahams' debt, the Upland property, and the interests in Westcott Woods, LLC; and (4) she actually responded to one of Danny's e-mails.

Plaintiffs' contentions do not convince this Court that the bankruptcy court clearly erred in determining that the evidence presented at trial was not enough to prove by a preponderance of the evidence that Alanna Vicario knowingly and intentionally omitted information from her bankruptcy filings. First, the mere fact that the Vicarios added creditors to their schedules that were not listed on their creditor matrix does not prove that Alanna herself knew about these creditors and intentionally omitted them from the list. Second, although John Vicario did testify that Alanna was "somewhat" involved in the operations of JMV Builders, Inc., and that she "[k]ept track of the records, cut checks for [him, and] did banking," he also testified that he was solely responsible for obtaining the funds necessary to keep JMV Builders, Inc. going and that Alanna was not involved at all in the Abraham loan. (Tr. 215-218.) John's testimony indicates that Alanna "had knowledge of everyday bills that were related to the business as far as suppliers, subcontractors, tradesmen that needed to be paid." (Tr. 216.) However, Alanna's knowledge of the routine business of JMV Builders, Inc., that is, her knowledge of the houses John was building and the bills associated with each one, does not necessarily mean that she knew about the extraordinary measures – like the loan from the Abrahams and keeping a secret interest in the Upland property – that John was taking to save his dying business.

Likewise, the fact that Alanna was copied on the e-mails Danny Abraham sent to John does not necessarily mean that she knew about all of John's business dealings and intentionally omitted them on her bankruptcy filings. As Plaintiffs argue, it is reasonable to infer from the fact

that Alanna received these e-mails that she read them and understood what was being discussed in them. It is also reasonable, however, to infer, as the bankruptcy court did, that Alanna did not read these e-mails and that Danny was copying her on his e-mails – which were always directed to John – simply to ensure that John was receiving them. This is reasonable because, on at least two occasions, John actually sent Danny e-mails from Alanna's account.

The strongest evidence in Plaintiffs' favor is that, on one occasion, Alanna Vicario responded to one of Danny Abraham's e-mails. Danny's e-mail to Alanna and John's e-mail accounts (directed to John) stated that Danny had left two voice messages for John today and several last week. Danny explained that he "really would like an update on what is going on with the big house and Westcott Woods." Pl. Trial Ex. 47. In response, Alanna informed Danny that John was working on the big house, that she would let John know that Danny was looking for him. Pl. Trial Ex. 47. But even this e-mail falls short of demonstrating that Alanna knew the details of the Westcott Woods deal or of John's secret interest in the Upland property. Furthermore, the e-mail says nothing about John's debt to Danny's parents. The bankruptcy court weighed this e-mail in light of the rest of the evidence and determined that Alanna did not knowingly and intentionally make any false oaths. That conclusion was not clearly erroneous. See *In re Davis*, 638 F.3d at 553 ("intent is a question of fact, which is subject to the highly deferential 'clearly erroneous' standard of review").

### 2.    Count II:  11 U.S.C. § 727(a)(2)

Plaintiffs next contend that the bankruptcy court erred by finding that Alanna Vicario did not conceal her property or property of the estate with the intent to hinder, delay, or defraud her creditors or the bankruptcy Trustee. See § 727(a)(2). To prevail on a claim under § 727(a)(2), Plaintiffs must prove that (1) the debtor, Alanna Vicario, (2) transferred or concealed (3) her

property or the property of the estate (4) with the intent to hinder, delay, or defraud a creditor or bankruptcy Trustee (5) within one year of bankruptcy or after the debtor filed her bankruptcy petition.  See *In re Kontrick*, 295 F.3d at 736 (citing 11 U.S.C. § 727(a)(2)(A)); see also *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002).  For purposes of § 727(a)(2), a concealment "consists of failing or refusing to divulge information to which creditors were entitled." *In re Self*, 325 B.R. at 237 (citations omitted); see *In re Scott*, 172 F.3d at 967 (quotation omitted) (stating that concealment "includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known").

The denial of discharge under § 727(a)(2) "requires proof of actual intent to hinder, delay, or defraud a creditor."  *In re Self*, 325 B.R. at 239 (citing *Village of San Jose*, 284 F.3d at 790).  While actual intent is hard to prove, it may be demonstrated through circumstantial evidence.  *Village of San Jose*, 284 F.3d at 791.  The Seventh Circuit has looked to a "series of factors which, if proven, indicate actual fraud":

> (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.*  If the creditor is able to show that one or more of these factors are met, there is a presumption of intent to defraud, which shifts the burden to the debtor to rebut.  *Id.*

Plaintiffs argue that they proved Alanna's intent through circumstantial evidence in the following ways:  (1) on December 28, 2007, John Vicario purported to sell the Upland property to a family member, Joni Elliott, who is the wife of John's third cousin and a close friend of the Vicarios; (2) the e-mails between Danny Abraham and John Vicario illustrate that John expected

to receive a payout when he was finished building the big house and the property was sold and that he would give Danny the money; and (3) John made the deal to split the profits with Joni Elliott during a time in which the Vicarios "were in financial ruin and contemplating filing for bankruptcy." (Pl. Br. at 37.)

Again, while this is strong evidence demonstrating John's intent to conceal assets, nothing to which Plaintiffs point leads inexorably to the conclusion that Alanna herself actually intended to defraud her creditors or the bankruptcy Trustee by leaving certain assets off her bankruptcy filings. After hearing the evidence presented at trial, the bankruptcy court found that Plaintiffs failed to prove actual intent. The court's conclusion was not clearly erroneous. See *In re Davis*, 638 F.3d at 553.

### 3. Counts III and IV: 11 U.S.C. §§ 727(a)(4)(D) and (a)(3)

Unlike Counts I and II, on which the bankruptcy court found in favor of Plaintiffs as to John Vicario but not Alanna, on Counts III and IV, the court concluded that Plaintiffs failed to prove their case as to both of the Vicarios. Plaintiffs now ask this Court to reverse the bankruptcy court's determination as to Alanna Vicario on these two counts.

Once more, Plaintiffs have not presented any evidence that convinces this Court to reverse the judgment of the bankruptcy court. Simply pointing to John Vicario's interest in the little house and his former ownership interest in Westcott Woods, LLC, Alanna's minor involvement in the Vicarios' financial affairs and John's construction activities, and the fact that she was married to John is not enough. The bankruptcy court concluded that Plaintiffs' evidence against Alanna was insufficient on these counts and Plaintiffs have not demonstrated that the bankruptcy court's decision was clearly erroneous.

As to each of the claims in their amended complaint, Plaintiffs essentially ask this Court to substitute its judgment for that of the bankruptcy court. That court, however, heard the testimony and reviewed the evidence as to the alleged § 727 violations, and was in a far better position than this Court to judge John and Alanna's credibility. Because Plaintiffs have offered this Court no compelling reason to disregard the bankruptcy court's judgment and because it is plausible in light of the testimony at the trial, the Court cannot conclude that the bankruptcy court committed clear error. See *Bielecki v. Nettleton*, 183 B.R. 143, 148-49 (N.D. Ill. 1995) (affirming the judgment of the bankruptcy court). As such, the bankruptcy court's judgment in favor of Alanna Vicario on Counts I through IV is affirmed.

## III.    Conclusion

For the reasons set forth above, the Court affirms the judgment of the bankruptcy court.

Dated:  December 22, 2011                              _____
                                                        Robert M. Dow, Jr.
                                                        United States District Judge